Jolene F. LaVigne-Albert
Partner

212 612-0685
jlavignealbert@schlamstone.com

Schlam Stone & Dolan LLP
26 Broadway, New York, NY 10004
Main: 212 344-5400 Fax: 212 344-7677
schlamstone.com

August 11, 2026

**REQUEST TO FILE UNDER PARTIAL SEAL**

**BY EMAIL AND ECF**
The Honorable Brian M. Cogan
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re:** *U.S. v. Rubin et al.*, Case No.: 25-CR-00281 (BMC)

Dear Judge Cogan:

We are counsel to Defendant Jennifer Powers in the above-captioned action. We submit this letter motion seeking a modification of Ms. Powers's conditions of release, specifically, the removal of her ankle bracelet.

We make this motion because the ankle bracelet has been an impediment to Ms. Powers's job seeking efforts, including a potential full-time employment opportunity that was recently presented to her, and to which she has to respond by August 15, 2026. Ms. Powers was also recently diagnosed [redacted], a condition that the ankle bracelet exacerbates. Moreover, and independent from the employment and health reasons, we make this motion because Ms. Powers has fully complied with the conditions of her release for over 10 months, without issue, and the ankle bracelet is no longer necessary. Indeed, the government had argued upon Ms. Powers's arrest that "a significant bond package, secured by assets that have no connection to Rubin" would "secure [Ms. Powers's] appearance at trial and the safety of the community." (ECF No. 6 at 12.) Such a significant bond package—$850,000 secured by [redacted]—has been entered, thus assuring Ms. Powers's appearance and the safety of the community.

Thus, we submit that electronic monitoring—which courts have described as an "extraordinary condition" that "seriously limits freedom"—is not the "least restrictive" condition that will assure Ms. Powers's appearance and the safety of the community, and as such, should be vacated.

As detailed below, Pretrial Services does not consent to the removal of the bracelet because it does not believe that the circumstances presented in this letter are sufficient to warrant the removal of the ankle bracelet. However, Pretrial Services confirms that Ms. Powers has fully complied with the conditions of release.

The Government objects to the removal of the ankle bracelet. Assuming the Government will file an opposition to this letter motion, we respectfully seek leave to file a reply in further support of it.

## I. Relevant Background

Ms. Powers is 46 years old, a U.S. citizen, has no prior criminal record, no ties outside the United States, and has surrendered her passport. [redacted]

[redacted]

Ms. Powers is charged with sex trafficking in violation of 18 U.S.C. § 1591, interstate transportation for prostitution in violation of 18 U.S.C. § 2421(a) (the "Mann Act"), and tax fraud in violation of 26 U.S.C. § 7206(1). The sex trafficking charges are based on events that allegedly took place several years ago (2011-2017), when Ms. Powers lived in New York City and worked as co-defendant Howard Rubin's assistant. As the Court will recall, Ms. Powers was found not liable for very similar charges brought against her by civil plaintiffs, following a jury trial presided by this Court in March 2022. Ms. Powers successfully defeated all claims of sex trafficking against her in the civil action, which were based on the same statute as the one at issue in this criminal case and were tried based on the less demanding preponderance of the evidence burden.

Nevertheless, on September 26, 2025, Ms. Powers was arrested at her home in the Northern District of Texas based on the same alleged sex trafficking venture as the one that was alleged in the civil case.

On September 29, 2025, Ms. Powers appeared with local counsel before Magistrate Judge Jeffrey L. Cureton in the Northern District of Texas. Judge Cureton released Ms. Powers and declined to impose the appearance bond that the government sought. Ms. Powers agreed to various conditions for her release, including electronic monitoring. The issue of

electronic monitoring was not specifically argued or discussed at her initial appearance, or at any time subsequently.

Ms. Powers flew to New York for her arraignment, without issue. On October 1, 2025, Ms. Powers was arraigned before Magistrate Judge Peggy Kuo, who re-imposed essentially the same conditions of release that Judge Cureton had previously imposed, and added as a condition of Ms. Powers's release an $850,000 appearance bond, which the government and Ms. Powers had agreed upon. *See* ECF No. 23 (Minute Entry from Arraignment) and ECF No. 25 (Order Setting Bail Conditions). [redacted]

Of relevance to this motion, in a letter filed by the government when Ms. Powers was arrested, the government argued that Ms. Powers's release should be conditioned on "a significant bond package, secured by assets that have no connection to Rubin" and stated that such a bond would "secure her appearance at trial and the safety of the community." (ECF No. 6 at 12.) Such a bond has since been entered. In the same letter, the government extensively argued, as to defendant Howard Rubin, that electronic monitoring was essentially pointless. (*Id.* at 11, fn. 3.) In any event, by the time Ms. Powers appeared for her arraignment in New York, she was already subject to electronic monitoring pursuant to an order issued by a Texas judge, who had declined to require an appearance bond.

Per her Conditions of Release (ECF No. 25), Ms. Powers has surrendered her passport and is confined to home detention at her residence in Texas, "except for court appearances, court-ordered obligations, attorney visits, religious services, medical appointments, employment, education, substance abuse/mental health services and other activities approved in advance by Pretrial Services." She is not permitted to "sell, dispose or transfer any asset over $500 without permission of the U.S. Pretrial Services" and she "may not incur any new debt or open new lines of credit without approval of U.S. Pretrial Services."

Stephen Powers, Jennifer Powers's husband, was indicted in the Superseding Indictment in this case, which charges him with tax fraud (Jennifer and Stephen Powers filed joint tax returns). Mr. Powers surrendered on October 2, 2025, and was released with conditions on a $250,000 appearance bond secured [redacted] *See* ECF No. 28. Like Ms. Powers, Mr. Powers is under the supervision of Pretrial Services and has surrendered his passport.

Thus, Jennifer and Stephen Powers' lives have been closely monitored by Pretrial Services for months without incident.

As relevant to this motion, this case has been given the complex case designation, and discovery is ongoing. No trial date has yet been set.

## II. Ms. Powers Has Fully Complied With Her Conditions of Release

Ms. Powers has flown to New York on her own to attend court proceedings in this matter four times thus far, and one additional time to meet with her lawyers, all without issue. With permission from Pretrial Services, Ms. Powers has left her house [redacted]

In addition, with the Court's permission, Ms. Powers attended employment-related and family events – some outside the state of Texas – without incident. *See* ECF No. 49 (adding Eastern District of Texas to permissible travel zones and approving day trip to that district for prospective employment purposes); No. 59 (approving attendance at son's birthday party); No. 88 (approving attendance at other son's birthday gathering); No. 99 (approving two separate family gatherings); No. 105 (approving 6-day trip to Omaha for son's baseball tournament); and No. 108 (approving Father's Day outing).

Mr. Wayne Webb is the Senior Probation Officer with the Northern District of Texas who supervises Ms. Powers on a day-to-day basis, including through frequent communications and home visits. Ms. Powers routinely—essentially on a weekly basis over the summer—submits requests in advance through the "BI SmartLINK" application for Officer Webb's approval, such that Ms. Powers will often effectively map out her days for Officer Webb.

Officer Webb defers to Ms. Powers's Pretrial Officer in New York, Officer Jada Gross, on any decision regarding the removal of her ankle bracelet. Officer Gross has indicated that Pretrial Services does not consent to the removal of the ankle bracelet because it does not believe that the circumstances presented in this letter are sufficient to warrant it. Pretrial Services however confirms that Ms. Powers has fully complied with the conditions of her release. The Government has indicated that it objects to the removal of the ankle bracelet.

## III. The Applicable Legal Standard

This Court may "at any time" amend conditions of release. 18 U.S.C. § 3142(c)(3). *See also* 18 U.S.C. § 3145(a)(2) (a defendant "may file, with the court having original jurisdiction over the offense, a motion for amendment of the conditions of release").

Courts are required to limit conditions of release "to the least restrictive further condition, or combination of conditions, that [it] determines will reasonable assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). Modifying conditions of release does not require "any prior determination that the magistrate's order was clearly erroneous or contrary to law" and is subject "only to the statutory standards applicable to the setting of bail." *United States v. Zuccaro*, 645 F.2d 104, 106 (2d Cir. 1981). That a defendant previously agreed to a condition is not a bar to modifying it. *See, e.g., U.S. v. Lee*, 972 F.Supp.2d 403 (E.D.N.Y. 2013) (defendant charged with child pornography offenses successfully moved to revoke a prior confidentiality waiver he had agreed to as a condition of his release).

18 U.S.C. § 3142(c)(3) "does not explicitly establish a legal standard that must be satisfied in order to warrant" the modification of conditions of release. *United States v. Bankman-Fried*, No. 22-CR-0673 (LAK), 2023 WL 1490417, at *2 (S.D.N.Y. 2023). Although "courts in this district have found that judicial authorization to amend a release order under section 3142(c) arises where there is a changed situation or new information that warrants altered release conditions," *id*., courts have often relaxed conditions for a defendant already out on bail without strictly requiring a showing of changed circumstances. In any event, Ms. Powers's new opportunity to pursue full-time employment and her [redacted] diagnosis are sufficient changed circumstances to warrant removal of her ankle bracelet. *See, e.g., United States v. Boyd*, No. 21-CR-486 (SHS), 2022 WL 790771, at *1, fn. 1 (S.D.N.Y. 2022) (relaxing defendant's conditions of release from home incarceration to home detention in order to allow him to accept a job offer); *United States v. Lyons*, No. 91-CR-889, 1991 WL 278954 (S.D.N.Y. 1991) (same); *United States v. Lloyd*, No. 17-CR-119 (W.D.N.Y. 2020), ECF Nos. 141, 152, and 12/23/2019 Minute Entry (granting motion to modify conditions of release from home incarceration to home confinement with a curfew so that defendant could work despite opposition from the government and Probation; and subsequently further relaxing the conditions of release from home detention to curfew, because the defendant had been fully compliant with his conditions of release for over ten months).

## IV. The Ankle Bracelet Is An Impediment to Ms. Powers' Employment Prospects and Exacerbates Her Health Issues

Among the § 3142(g) factors a court must consider when determining conditions of release are the defendant's "physical condition" and "employment" status. Moreover, one of the conditions of Ms. Powers's release is that she "continues or actively seeks employment." Aside from it being a condition of her release, Ms. Powers wants to find employment.

Ms. Powers cannot seek employment in the field she trained for (teaching) given the nature of the charges against her in this case. She attended two job fairs and sent out numerous job applications but was unable to secure employment. She has had to be creative looking for employment. [redacted]

[redacted] Many of these jobs require extended periods of standing, which the ankle bracelet, together with Ms. Powers's [redacted] (see below), makes difficult.

Although Ms. Powers has managed to piece together intermittent employment, the ankle bracelet creates logistical issues that make finding and keeping a job difficult. It malfunctions at times which causes it to go off, requiring Ms. Powers to speak immediately with the monitoring service and move to a specific location (such as closer to a window), triggering a high stress situation and alarming Ms. Powers and those around her (which have included her young children, and people in her vicinity while she was working). For example, when Ms. Powers travelled to Omaha with the Court's permission, the ankle bracelet often malfunctioned because of limited internet access, creating many stressful situations. (Eventually, Pretrial Services simply trusted Ms. Powers even though they could not monitor her location at all times.)

[redacted] but the ankle bracelet makes it difficult to manage the condition as it exacerbates [redacted]

Until now, Ms. Powers had not been able to get any offers of full-time employment. She has such an opportunity now. [redacted]

In sum, the jobs that Ms. Powers had been able to find thus far, and that she may be able to find in the future, will require her to be on her feet and move around, and as such, the ankle bracelet is an impediment, even more so given that the bracelet exacerbates her [redacted]

## V. <u>The Ankle Bracelet Is Too Restrictive and Unnecessary</u>

Ms. Powers has been out on bail for more than 10 months without issue and continued electronic monitoring is not the "least restrictive" condition that will reasonably assure Ms. Powers's appearances and the safety of the community. Indeed, the government previously acknowledged that a significant bond—which has since been entered—would be sufficient to secure Ms. Powers's appearance at trial and the safety of the community. Thus, there is no need for continued electronic monitoring.

"Required wearing of an electronic bracelet, every minute of every day, with the government capable of tracking a person not yet convicted as if he were a feral animal would be considered ***a serious limitation on freedom*** by most liberty-loving Americans." *United States v. Polouizzi*, 697 F. Supp. 2d 381, 389 (E.D.N.Y. 2010) (emphasis added) (holding that electronic monitoring for a defendant awaiting trial on charges of possession of child pornography who had "complied fully with the terms of bail and supervision while living with his family and operating his restaurant" was "unconstitutionally excessive").[1] *See also United States v. Diaz*, No. 17-CR-227(VEC), 2018 WL 5282882 (S.D.N.Y. 2018) (following *Polouizzi* and relieving defendant— who had failed to register as a sex offender, when he had previously been convicted of rape and indecent acts—from the need to wear an ankle bracelet, holding that the defendant did not "present[] a risk of flight sufficiently serious to warrant the ***extraordinary*** conditions of a curfew or electronic monitoring" and as such, the statute's requirement for the ankle bracelet violated due process, where defendant's personal appearance to all proceedings, his personal recognizance bond of $50,000 co-signed by his siblings, his travel restrictions, and his strict pretrial supervision, were sufficient to assure his appearance at trial without the need for a curfew or electronic monitoring) (emphasis added).

Importantly, ankle monitoring is not required by statute for the offenses charged in this case.

*United States v. Lyons*, No. 91-CR-889, 1991 WL 278954 (S.D.N.Y. 1991) is particularly instructive. There, the defendant, who had family in Great Britain, was charged with conspiracy to embezzle and money laundering. The court was prepared to relieve the defendant from wearing an ankle bracelet full time to enable the defendant to earn income as a consultant while he was awaiting trial, in a complex case where trial was delayed. The court

[1] Electronic monitoring was required by statute (18 USC § 3142(c)(1)(B)) given the offense at issue in *Polouizzi*, which is not the case here. The *Polouizzi* Court nevertheless vacated the condition requiring electronic monitoring as unconstitutional.

also considered that the ankle bracelet would make it impractical for the defendant to perform the duties of his employment, as is the case here for Ms. Powers.

In *United States v. Hutchins*, 298 F. Supp. 3d 1205 (E.D. Wis. 2017),[2] the court granted defendant's motion to remove his ankle bracelet. The defendant was a U.K. citizen whom the government claimed had no family or real estate ties to the U.S. and was charged with crimes arising from his alleged deployment of a malware program. The court found that the defendant was not required to show new facts to warrant the removal of his ankle bracelet, because the court had an "ongoing obligation under Section 3142(c) to ensure that only the least restrictive conditions necessary" be employed and that "when defendants establish that they will abide by their obligation to appear in court, logic dictates that the justification for imposing the existing release conditions lessens." *Id.* at 1208-1209. *See also United States v. Lee*, No. 4:24-CR-06018-MKD-4, 2025 WL 2375295 (E.D. Wash., 2025) (granting motion to remove GPS monitoring after the defendant, who was charged with distribution of cocaine and conspiracy to distribute cocaine, had been on pretrial release for a year without facing any allegations of violating release conditions).

Here, electronic monitoring is unnecessary, and needlessly infringes upon Ms. Powers' rights, especially as it impedes her ability to find and hold employment and exacerbates her [redacted] She has no criminal history and the facts underlying the sex trafficking charges against her are almost a decade old. Ms. Powers was found not liable of very similar sex trafficking charges in a civil trial held in 2022, and as such, the extraordinary limitation on her freedom caused by electronic monitoring also comes with a unique risk of an erroneous deprivation of Ms. Powers's rights. Ms. Powers has deep ties to her community, including through [redacted] She has surrendered her passport. She has the [redacted] Per her conditions of release, Ms. Powers cannot spend over $500 without approval from Pretrial Services. Ms. Powers and her husband, Mr. Powers, are in frequent contact with and under the supervision of Pretrial Services, [redacted]

Although we recognize that the charges against Ms. Powers are serious, even the government took the position at the time of Ms. Powers's arrest that "a significant bond package, secured by assets that have no connection to Rubin" would be sufficient to "secure her appearance at trial and the safety of the community." (ECF No. 6 at 12.) Such a significant bond package has since been entered, and Ms. Powers' release since September 29, 2025—more than 10 months ago—has been without issue.

[2] Other than the ones already cited, we are aware of no further reported decisions in New York addressing the sole question of removal of an ankle bracelet.

Thus, continued electronic monitoring is not the "least restrictive" condition that will reasonably assure Ms. Powers's appearances and the safety of the community: the condition should be lifted.

Respectfully submitted,

Jolene F. LaVigne-Albert

*Encls.*

cc: Clerk of Court (BMC) (by ECF)
Counsel of Record (by ECF)